## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-CV00035-RBJ

Ultegra Financial Partners, Inc.

     Plaintiff,

v.

Northway Mining, Inc., a New York limited liability company,
Mining Power Group, Inc., a Florida corporation, and
Michael Maranda, an individual,
Dror Svorai, an individual,
Mindmap, Inc., a Nevada Corporation,
CoinBase Asset Management, Inc. dba CoinBase, is a Delaware corporation
BitPay Services, LLC, a Georgia limited liability company
Proof Computing, a Vermont liability company
Mining Store, LLC, a North Carolina limited liability company
Green Mountain Electric Supply, a Vermont corporation, dba Alarm Systems Distributors
dba Valley Electric Supply dba Green Mountain Lighting Designs,
Teacher Federal Credit Union, A New York credit union
CSX4236 Motorcycle Salvage, LLC

     Defendants.

---

## VERIFIED AMENDED COMPLAINT

---

Plaintiff, Ultegra Financial Partners, Inc. ("Ultegra"), through its counsel, T. Edward Williams, Esq., for its Verified Amended Complaint, states as follows:

### INTRODUCTION

Plaintiff amends its previous complaint to add claims for fraudulent transfer, fraud, alter ego liability, aiding and abetting fraud, injunctive relief, civil conspiracy, civil theft

in violation of Colo. Rev. Stat. Section 18-4-401(1), conversion, interference with a contract, and a claim to set aside the fraudulent transfer.

On or around December 13, 2018, Northway Mining and Mining Power, in need of money, sought a $6.2 million-dollar loan from Ultegra Financial Partners, Inc. The loan would be made in two tranches of $350,000.00 and $5.850 million dollars. On December 24, 2018, Defendants received the first tranche of $350,000.00. The second tranche of the loan has not yet been made, but Ultegra is ready, willing, and able to make the second tranche of the loan.

In exchange for making the loan to Northway Mining and Mining Power, Northway Mining and Mining Power agreed to pay Ultegra a Minimum Banking Fee and other fees, including a $66,000.00 fee. Northway Mining and Mining Power have not pay these fees.

After Ultegra filed its Complaint, Defendants, Michael Maranda and Dror Svorai, using various third parties and lawyers, engaged in an extended fraudulent transfer scheme to deprive Ultegra of monies they owed Ultegra and properties they pledged to secure the loan.

## PARTIES

**Plaintiff**

1.    Plaintiff, Ultegra Financial Partners, Inc. ("Ultegra"), is a Colorado corporation organized under the laws of the State of Colorado, with a principle place of business at 1099 18th Street, Suite 2680 Denver, Colorado 80202. Ultegra specializes in making loans to businesses in Colorado and around the United States.

Defendants

2.      Defendant, Northway Mining, LLC ("Northway"), is a New York limited liability company, with its corporate address at 707 Flat Road Athens, NY 12015.  Northway's Registered Agent is United States Corporation Agents, Inc., and it may be served at 7014 13th Avenue, Suite 202 Brooklyn, New York 11228.   Upon investigation and review of corporate filings with the Securities and Exchange Commission's Edgar System, no member of Northway is a Colorado resident.

3.      Defendant, Mining Power Group, Inc. ("Mining Power"), is a Florida corporation and the parent company of Northway.  Mining Power has a principle place of business at 20200 Dixie Highway Suite 906 Miami, Florida 33180.

4.      Defendant, Michael Maranda, ("Maranda"), is an individual who represents himself as the CEO of Northway.  Maranda may be served at 38 Oaklawn Avenue Farmville, NY 11738.

5.      Defendant, Dror Svorai ("Svorai"), is an individual who owns 55 percent of Northway through Mining Power.  Svorai may be served at 20200 Dixie Highway Suite 906 Miami, Florida 33180.

6.      Defendant, Teachers Federal Credit Union ("Teachers Federal"), is a New York-based credit union that specializes in lending to individuals and to business in and around upstate New York.  Teachers Federal is headquartered at 102 Motor Parkway Hauppauge, New York 11788.   With permission from the National Credit Union Administration, Teachers Federal operates under Charter Number of 8116.

7.      Defendant, Green Mountain Electric Supply ("Green Mountain"), is a Vermont Corporation that does business in New York and the New England area.  Green Mountain has a corporate address at 356 Rathe Road Colchester, Vermont 05446.  Green Mountain has a mailing address of 10 Sharon Lane Balston Lake, New York and a business email address of joshl@gmes.com, which is the email address of Green Mountain's Vice President.

8.      Defendant, Serenity Alpha, LLC ("Serenity"), is a Nevada limited liability company with its Registered Agent at 7848 West Sahara Avenue Las Vegas, Nevada 89117. According to the Nevada Secretary of State, Serenity is managed by Daniel Kim and Allen Song.

9.      Defendant, Allen Song ("Song"), is an individual and the Chief Financial Officer ("CFO") of Serenity.  Song has a listed address at 7848 West Sahara Avenue Las Vegas, Nevada 89117.

10.     Defendant, Daniel Kim ("Kim"), is an individual and a manager of Serenity.  Kim has a service address at 7848 West Sahara Avenue Las Vegas, Nevada 89117.

11.     Defendant, Mindmap, Inc. ("Mindmap"), is a Nevada corporation that specializes in hosting services to companies around the United States.  Mindmap has a principle place of business at 3960 Howard Hughes Parkway, Suite 500 Las Vegas, Nevada 89169.

12.     Defendant, CSX4236 Motorcycle Salvage, LLC ("Motorcycle Salvage"), is a New York limited liability company.  Motorcycle Salvage has a principle address at 707 Flat Road Athens, NY 12015.

13.    Defendant, BitPay Services, LLC ("BitPay"), is a Georgia limited liability company with its principle place of business at 3405 Piedmont Road NE Suite 200 Atlanta, Georgia 30305. Bitpay's Registered Agent is Alexander P. Woollcott, who may be served at 3343 Peachtree Road NE Suite 1600 Atlanta, Georgia 30326.

14.    Defendant, Mining Store, LLC, is a North Carolina limited liability company with its principle place of business at 270 Cornerstone Drive Suite 102 Cary, North Carolina 27519.

15.    Defendant, CoinBase Asset Management, Inc. ("CoinBase"), is a Delaware corporation with its principle place of business at One Front Street San Francisco, California 94111.

16.    Defendant, Proof Computing, is a Vermont limited liability company with a designated business address at 2513 Glover Street Glover, Vermont 05839. According to information filed with the Vermont Secretary of State, Proof Computing's Registered Agent is Matthew Eldridge who may be served at 2513 Glover Street Glover, Vermont 05839.

## JURISIDCTION

17.    This Court's jurisdiction is premised on diversity jurisdiction under 28 U.S.C. § 1332 because Plaintiff and Defendants are completely diverse and because the amount in controversy exceeds $75,000.00. In addition, upon investigation and upon review of corporate filings with the Securities and Exchange Commission Edgar System, no member of Northway is a Colorado resident.

18.    Maranda and Svorai are subject to personal jurisdiction because of the improper lack of segregation of corporate assets between Northway and Mining Power and Svorai and Maranda.

19.    This Court further has personal jurisdiction over the remaining Defendants because each of their fraudulent acts have harmed Ultegra in the State of Colorado.

## VENUE

20.    Venue in the Federal District Court for the District of Colorado is proper under 28 U.S.C. § 1391 because the contract was executed in this jurisdiction and the acts and omissions that gave rise to this Complaint occurred in this jurisdiction and because the acts and omissions complained of affected a Colorado resident.

## FACTUAL ALLEGATONS

### Northway and Mining Power

21.    On or around August 1, 2018, Defendant Mining Power entered into an Acquisition Agreement to purchase Northway Mining. *See Acquisition Agreement*, attached as Exhibit 1.

22.    Mining Power is owned by Defendant Svorai.

23.    Northway is owned by Defendant Maranda.

24.    Through the Acquisition Agreement, Mining Power agreed to purchase Northway for $1.1 million dollars over 180 days. *Id.* at p.2.

25.    In exchange for $1.1 million dollars, Mining Power would own 55 percent of Northway. *Id.*

26.    Mining Power was to make the $1.1 million dollar payment over 180 days.

27.     Mining Power has not fully paid the $1.1 million dollars to Northway or to Maranda.

## Breach of Loan Agreements

28.     On December 13, 2018, Defendants executed a Term Sheet with Ultegra to borrow $6.2 million dollars (the "Loan") from Ultegra.

29.     On December 19, 2018, Defendants executed Fee Agreement and a Commitment Letter.

30.     Together, the Term Sheet, the Fee Agreement, and the Commitment Letter constitute the Loan Agreements executed by Northway and Mining Power.

31.     As part of the Loan, Ultegra was entitled to certain fees and costs.

32.     Defendants agreed to pay Ultegra a due diligence fee of $37,500.00.

33.     Defendants paid Ultegra $25,000.00 of the due diligence fee, leaving a balance of $12,500.

34.     Ultegra is entitled to a Minimum Banking Fee of $620,000.00.

35.     The Minimum Banking Fee became due the moment Ultegra presented the Commitment Letter to Northway and Mining Power.

36.     The Loan was to be made in two traches of $350,000.00 and $5.850 million dollars.

37.     Apart from the fees discussed above, Ultegra was entitled to certain fees on the first tranche of the Loan.

38.     Specifically, on the first tranche, Ultegra was entitled to a fee of $35,000.00.

39.     Ultegra was also separately entitled to a credit facility fee of $3,500.00 and a commitment fee of $3,500.00.

40.     Northway and Mining Power also granted Ultegra a security interest in their assets and a security interest in fixtures on the real property at 707 Flats Road.

41.     The provision granting Ultegra a security interest provides as follows:

SECURITY INTEREST GRANTING CLAUSE; ULTEGRA'S
LIEN.

(a)     To secure the full and timely payment and performance of all of Client's obligations under and with respect to this Agreement, including without limitation, Client's obligation to pay any and all Banking Fees, any Break-Up Fees, liquidated or other damages, all costs, expenses, advances and other amounts to be paid or reimbursed to Ultegra pursuant to this Agreement, and all other amounts payable by Client to Ultegra under or with respect to this Agreement (collectively, the "Obligations"), Client hereby grants to Ultegra, a continuing security interest in, lien and collateral assignment in and to, and right of setoff against (collectively, "Ultegra's Lien") all of Client's personal and real property and all rights to such personal and real property held by Client, in each case, whether now owned or existing or hereafter acquired or arising and regardless of where located, including without limitation, all: (1) accounts; (2) chattel paper; (3) commercial tort claims; (4) (i) all deposit accounts and (ii) all cash and other monies and property of Client in the possession of, or under the control of, Ultegra; (5) equipment; (6) fixtures; (7) general intangibles (including intellectual property); (8) goods; (9) instruments; (10) inventory; (11) investment property; (12) letter- of-credit rights and supporting obligations; and (13) other personal property; and real estate; together with all books, records, ledger cards, files, correspondence, computer programs, tapes, disks and related data processing software that at any time evidence or contain information relating to any of the property described above or are otherwise necessary or helpful in the collection thereof or realization thereon; and proceeds and products of all or any of the property described above (such terms shall have the meanings ascribed in the Uniform Commercial Code as then in effect in the State of Colorado; and collectively, all of the same, the "Collateral") and includes any amounts now or hereafter held by Ultegra as advance payments, deposits or retentions paid or remitted to Ultegra by or on behalf of Client. This Agreement shall be deemed to constitute a "security agreement" under the terms of the Uniform Commercial Code in effect in the State of Colorado. Client shall be the "debtor" and Ultegra shall be the "secured party".

(b)   In furtherance of the foregoing grant, Client hereby authorizes and, until such time as the Obligations are paid in full, in cash, shall continue to authorize Ultegra to (i) file one or more financing or continuation statements, and amendments thereto (or similar documents required by any laws of any applicable jurisdiction), relating to all or any part of the Collateral, and/or (ii) file a copy of this Agreement with the ultimate loan disbursement agent and/or the accounts receivable disbursement agent for the contemplated funding, which shall serve for all purposes as Client's authorization and instruction to such agents to pay to Ultegra the amount of all Banking Fees owed by Client to Ultegra and the amount of any costs, expenses, or advances or other Obligations owed to Ultegra; in each such case, without the signature of, or further authorization by, Client, and Client hereby specifically ratifies all such actions previously taken by Ultegra.  An invoice for such Banking Fees, costs, expenses, and advances shall be delivered by Ultegra to Client and the applicable disbursing agent within five (5) business days before the scheduled closing. Payment of Banking Fees, costs, expenses, and advances owed by Client to Ultegra shall be made by the trustee or disbursing agent at the time of funding.

42.   Defendants agreed that the Loan would be released in two tranches.

43.   Defendants requested the first tranche of the loan be increased to $350,000.00 to allow Defendants to pay closing costs.

44.   On December 24, 2018, Northway received the first tranche of the Loan.

45.   On December 24, 2018, Ultegra requested payment of its fees of $66,000.00.

46.   The $66,000.00 is comprised of: $12,500.00, the balance of the due diligence fee; $35,000.00, the fee on the first tranche of the Loan; $15,000.00, the commitment fee; and $3,500.00, the credit facility fee.

47.   Maranda, via text message, promised to pay Ultegra the $66,000.00 on or before December 26, 2018.

48.   On December 27, 2018, again requested payment.

49.     Maranda did not respond to Ultegra's December 27, 2018, communication and no one from Northway or Mining Power responded.

50.     On December 27, 2018, Ultegra emailed its invoice to Northway, Mining Power, and Maranda.

51.     Neither Northway, Mining Power, nor Maranda responded to Ultegra's December 27, 2018 invoice.

52.     On December 28, 2018, through its counsel, Ultegra emailed Maranda and Svorai and requested payment.

53.     Neither Maranda nor Svorai responded to Ultegra counsel's email.

54.     On January 2, 2018, Ultegra sent Northway, Maranda, and Svorai a Demand Letter and requested immediate payment of all fees owed to Ultegra, including Ultegra's Minimum Banking Fee.

55.     Maranda and Svorai did not respond.

Fraud by Svorai and Maranda

56.     In early December 2018, Defendants Maranda and Svorai came up with the scheme to defraud existing and prospective creditors.

57.     At their respective offices in New York and Florida, Defendants Maranda and Svorai decided to take loans from prospective creditors, pledge assets to secure those loans, and then later, after the loans were made, transfer assets to third parties and into bit coin accounts, in an effort to prevent or delay Ultegra, and other creditors, from reaching those assets to repay the loan.

58.     On December 13, 2018, consistent with this scheme, Defendants sought a Loan from Ultegra.

59.     Defendants, Svorai and Maranda, presented financials that gave the impression that Northway and Mining Power were financially solvent.

60.     Defendants, Svorai and Maranda, also gave Ultegra the impression that Northway and Mining Power had a thriving business.

61.     In fact, Northway and Mining Power's business was precarious.

62.     Under the foregoing false pretenses, Northway and Mining Power received the Loan from Ultegra.

63.     Ultegra suffered damages in an amount to be determined at trial.

Fraudulent Transfers

64.     In early December 2018, Defendants Maranda and Svorai schemed to defraud Ultegra and other creditors of Northway Mining.

65.     The plan, first conceived by Svorai and later implemented by Maranda, was to seek loans from various lenders, pledge assets as securities for the loans, and then, once the loans were received, shift assets to third parties, out of the reach of the various creditors.

66.     Ultegra did not know of Maranda and Svorai's scheme before it made the Loan to Northway and Mining Power.

67.     On or about December 18, 2018, Maranda and Svorai executed the Loan Agreement.

68.     On December 24, 2018, Northway and Mining Power received the first tranche of the Loan.

69.     Shortly thereafter, Maranda and Svorai, using Northway and Mining Power, began transferring assets from bank accounts owned by Northway and Mining Power.

70.     Specifically, in mid January 2019, after learning of this suit, Maranda and Svorai, acting through Northway and Mining Power, transferred $600,000.00 from a bank account M&T Bank to Teachers Federal. *See Screenshot of Transfer out of M&T Bank*, attached as Exhibit 3.

71.     Neither Maranda nor Svorai disclosed he would transfer $600,000.00 out of its bank account at M&T Bank into Teachers Federal.

72.     Neither Maranda nor Svorai had previously disclose to Ultegra an account at Teachers Federal.

73.     Maranda and Svorai transferred the $600,000.00 to hinder, delay, and defraud Ultegra from recovering funds owed to it.

74.     Maranda and Svorai transferred other funds that belonged to Northway and Mining to third parties to avoid paying Ultegra.

75.     In addition to monies, Maranda and Svorai also transferred equipment, fixtures, and other properties to third parties to prevent Ultegra from seizing them.

76.     For example, between January 20, 2019, and February 4, 2019, Maranda and Svorai caused Northway and Mining Power to move assets and equipment to third parties including Mining Store, Proof Computing, Green Mountain, Teachers Federal, Motorcycle Salvage, CoinBase, BitPay, Mindmap, and to themselves.

77.     Maranda and Svorai also transferred properties pledged as security for the Loan.

78.     Certain entities and individuals to whom Maranda and Svorai transferred properties willingly cooperated with Maranda and Svorai in receiving properties.

79.     For example, Maranda and Svorai told certain individuals including CoinBit, Computer Proof, and other named Defendants about their scheme to defraud Ultegra.

80.     Maranda and Svorai also transferred funds into certain bit coin accounts to make it difficult or impossible for Ultegra to reach those funds in satisfaction of the debt owed to Ultegra.

### The Corporate Veil Should be Pierced

81.     At all relevant times, there was unity of ownership and interest between Maranda, Svorai, Northway, and Mining Power.

82.     At all relevant times, Maranda and Svorai controlled Northway and Mining Power.

83.     At various times relevant to this lawsuit, Maranda, Svorai, Northway, and Mining power each engaged in inappropriately transferring assets of value among themselves and to other Defendants listed in this lawsuit.

84.     All meaningful assets ended up in the possession of Maranda, Svorai, the Defendants named in this lawsuit, and entities not yet parties to this lawsuit.

85.     Northway and Mining Power have been used as mere instrumentalities for the transaction of Maranda and Svorai's own affairs and there is such unity of interest in ownership that the separate personalities of the corporations and their owners no longer exist.

86.     The alter ego relationship is supported by, but not limited to, the following: (i) the comingling of funds and assets and transfer of funds between corporate entities and the

owners themselves in the form of transfers from business bank accounts to personal bank accounts; (ii) the use of Northway and Mining Power as a mere shell to perpetrate fraud on creditors, including Ultegra; and (iii) the thinly capitalized nature of Northway and Mining Power.

87.    Justice requires recognizing the substance of the relationship over the form because the corporate fiction distinguishing between Maranda and Svorai and Northway and Mining Power is being used to perpetuate a fraud or defeat a claim by Ultegra.

88.    Upon information that forms a belief, Maranda and Svorai have caused Northway and Mining Power to transfer assets to Teachers Federal, CoinBase, BitPay, Proof Computing, Mining Store, Green Mountain, Mindmap, and the other named Defendants and Defendants to be named.

89.    An equitable result is achieved by disregarding the corporate form and holding Maranda and Svorai personally liable for Northway and Mining Power's breach of contract because Northway and Mining Power have been drained of assets and, without piercing the corporate veil, Ultegra will not be able to recoup damages and monies owed.

### FIRST CAUSE OF ACTION
**(Breach of Contract—Mining Power, Northway, and Michael Maranda)**

90.    Ultegra incorporates the previous allegations as if fully set forth in this paragraph.

91.    On or about December 13, 2018, Northway and Mining Power entered into the Loan Agreements for Ultegra to loan them $6.2 million dollars.

92.   Under the Loan Agreement, Defendants agreed to pay Ultegra its banking fees, its due diligence fees, its attorney fees, and other fees and costs Ultegra incurred in making the Loan.

93.   Ultegra performed under the terms of the agreements in that Ultegra delivered the first tranche of the Loan to Northway and Mining Power.

94.   Defendants breached the Loan Agreements, even after multiple demands from Ultegra.

95.   Ultegra suffered damages because of Defendants' breach.

96.   Ultegra is entitled to damages in excess of $686,000.00, not including Ultegra's attorney fees and costs.

## SECOND CAUSE OF ACTION
### (Promissory Estoppel—Northway, Mining Power, Maranda, and Svorai)

97.   Ultegra incorporates previous allegations as if fully set forth in this paragraph.

98.   Defendants promised to pay Ultegra fees including due diligence fees, the Minimum Banking Fees, and other fees and costs in exchange for Ultegra making the Loan.

99.   Northway, Mining Power, Maranda, and Svorai should have reasonably expected that their promises would induce action by Ultegra.

100.   Northway, Mining Power, Maranda, and Svorai's promises did induce action by Ultegra in that Ultegra incurred substantial costs in anticipation of the transaction.

101.   Justice requires that this Court enforce the promise.

102.   Ultegra is entitled to damages to be proven at trial.

C

## THIRD CLAIM FOR RELIEF
### (Alter Ego Liability—Defendants Maranda and Svorai)

103.   Ultegra incorporates the previous allegations as if fully set forth in this paragraph.

104.   Ultegra entered into the Loan Agreements with Northway and Mining Power.

105.   Maranda and Svorai caused Northway and Mining Power to enter into the transaction with Ultegra after the formed a scheme to take money from Ultegra without the intent to repay the Loan.

106.   Maranda and Svorai intentionally undercapitalized Northway and Mining Power.

107.   Maranda and Svorai told certain upper management individuals they had intentionally undercapitalized Northway and Mining Power and had moved assets out of the reach of Ultegra to avoid paying Ultegra.

108.   Maranda and Svorai caused Northway and Mining Power to enter into the Loan Agreements with Ultegra, and by Maranda "guaranteed" the Loan to defraud Ultegra.

109.   Maranda and Svorai are personally liable to Ultegra for damages, including consequential damages, for engaging in a scheme to defraud Ultegra.

## FOURTH CLAIM FOR RELIEF
### (Fraudulent Transfer—All Defendants)

110.   Ultegra incorporates the preceding allegations as if fully set forth in this paragraph.

111.   Maranda and Svorai caused Northway and Mining Power to transfer monies, properties, equipment and other items of value to themselves and to third parties.

112.   Upon information that forms a belief, neither Northway nor Mining Power received a benefit of reasonably equivalent value as a result of the transfers made by Maranda, Svorai, Northway, and Mining Power.

113.   Ultegra has been damaged by these transfer in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (Civil Conspiracy—All Defendants)

114.   Ultegra incorporates the preceding allegations as if fully set forth in this paragraph.

115.   From early December 2018 to the present, Defendants, Maranda, Svorai, Northway, and Mining Power arranged an unlawful scheme with the other named Defendants to transfer assets to certain individuals and entities out of the reach of Ultegra, to avoid repaying Ultegra the Loan and fees Ultegra incurred in making the Loan.

116.   Among the manifestation of the unlawful plan and agreement were the following: (i) Defendants moved assets to third parties to prevent or hinder Ultegra's collection; (ii) Defendants, Northway, Mining Power, and Maranda refused to pay fees owed to Ultegra; and (iii) Defendants, Maranda and Maranda, drafted documents that would make their transactions seem legitimate.

117.   The agreement was furthered by one or more unlawful, overt acts intentionally performed by the conspirators, including on January 18, 2019, and again on February 4, 2019, transferring certain assets out of the reach of Ultegra.

118.   As a result of Defendants' actions, Ultegra was harmed in that Ultegra lost financial revenue which hindered its ability to make loans to other clients.  Specifically, Ultegra lost out on a lucrative funding opportunity because of Defendants actions.

119.   Ultegra' injuries have resulted in damages and losses, including, without limitation: lost profits, loss of business opportunities, loss of contract rights, and damage to reputation.

120.   Ultegra suffered the above damages and injuries as a proximate result of Defendants' conspiracy and unlawful actions.   Further, Ultegra's injuries and damages were caused by acts of the conspirators who undertook to accomplish and complete the unlawful purposes of their agreement.

### SIXTH CLAIM FOR RELIEF
### (Aiding and Abetting Fraud—Maranda, Proof Computing, Green Mountain, BitPay, CoinBase, Motorcycle Salvage)

121.   Ultegra incorporates the preceding allegations as if fully set forth in this paragraph.

122.   As set forth herein, Defendants Maranda and Svorai, defrauded Ultegra.

123.   Defendants Maranda, Proof Computing, CoinBase, BitPay, and Green Computing knew of a plan by Svorai to defraud Ultegra and aided and abetted such fraud by presenting inaccurate statements of Northway and Mining Power's financial conditions and in accepting assets from Svorai and Maranda.

124.   As a direct and proximate result of Defendants' aiding and advancing fraud against Ultegra, Ultegra suffered damages.

125.   Ultegra specifically suffered economic losses, lost profits, and lost business opportunities.

126.   Defendants knew they were aiding and advancing a fraudulent scheme against Ultegra.

### SEVENTH CLAIM FOR RELIEF
### (Fraud—Maranda and Svorai)

127.   Ultegra incorporates the preceding allegations as if fully set forth in this paragraph.

128.   During the negotiations for Ultegra to make the Loan to Northway and Mining Power, Maranda and Svorai misrepresented the financial conditions of Northway and Mining Power.

129.   Specifically, Maranda and Svorai represented that Northway and Mining Power were solvent, that Northway and Mining Power had large contracts with third parties, that Northway and Mining Power intended to remain in business, and that Northway and Mining Power were adequately capitalized.

130.   At or near the time that Ultegra made the loan to Northway and Mining Power, Maranda and Svorai knew that Northway and Mining Power would not repay the Loan, that Northway and Mining Power would not pay the fees associated with the Loan, and that Northway and Mining Power did not have the contracts with third parties that Maranda and Svorai represented Northway and Mining Power had.

131.   The foregoing facts were material.

132.   Ultegra justifiably relied on Maranda and Svorai's representations regarding Northway and Mining Power's financial conditions.

133.   As a result of Maranda and Svorai's concealment, Ultegra has been damaged in an amount to be proven at trial.

EIGHTH CLAIM FOR RELIEF
(Interference with the Performance of a Contract—Maranda, Northway, Svorai, and Mining Power, CoinBase, BitPay, Motorcycle Salvage)

134.   Ultegra incorporates the preceding allegations as if fully set forth in this paragraph.

135.   Northway and Mining Power executed the Loan Agreements with Ultegra.

136.   The Loan Agreements are legally binding contracts.

137.   Defendants Maranda and Svorai knew that Northway and Mining Power were parties to the Loan Agreements.

138.   Defendants intentionally and improperly interfered with the Loan Agreements between Northway and Mining Power and Ultegra by inducing Northway and Mining Power to breach the terms of the Loan Agreements, and by causing Northway and Mining Power to divert funds that would be used to repay Ultegra and by transferring assets pledged to secure the Loan.

139.   On or about December 24, 2018, Northway and Mining Power breached the Loan Agreements.

140.   As a result of Northway and Mining Power's breach of the Loan Agreements, which breach was induced by Defendants, Ultegra has suffered economic losses, lost profits, loss of business opportunities, and other consequential damages to be proved at trial.

### NINTH CLAIM FOR RELIEF
(Injunctive Relief— Maranda, Northway, Svorai, and Mining Power)

141.   Ultegra incorporates the preceding allegations as if fully set forth in this paragraph.

142.   Colorado Revised Statute 38-8-108(1)(d)(I) allows this Court to grant injunctive relief to prevent the further disposition of property by the debtor or transferee in accordance with Rule 65 and other applicable rules.

143.   Ultegra's Motion for Injunctive Relief seeking that this Court bars all future transfer of assets from Defendants Northway, Mining Power, Maranda, and Svorai to all third parties is attached.

## TENTH CLAIM FOR RELIEF
(Conversion—Maranda and Svorai)

144. Ultegra incorporates the preceding allegations as if fully set forth in this paragraph.

145. At all times relevant to this lawsuit, Ultegra was entitled to possession of funds, equipment, and other assets in Northway and Mining Power's possession and control.

146. Between January 28, 2019 and February 4, 2019, Maranda and Svorai converted funds, equipment, and assets belonging to Ultegra.

147. To date, neither Maranda nor Svorai have returned the funds, equipment, or assets to Ultegra.

148. As a result of this failure, Ultegra has suffered damages in the form of economic losses, lost profits and other economic damages.

## ELEVENTH CLAIM FOR RELIEF
(Civil Theft Colo. Rev. Stat. 18-4-401(1)—Maranda and Svorai)

149. Ultegra incorporates the preceding allegations as if fully set forth in this paragraph.

150. Defendants Maranda and Svorai exercised dominion and control over funds, equipment and other assets that belonged to Ultegra.

151. Defendants, Maranda and Svorai, intend to permanently deprive Ultegra of the funds, assets, and equipment.

152. Ultegra has suffered damages as a result of Defendants Maranda and Svorai's actions.

## TWELFTH CLAIM FOR RELIEF
### (Set Aside Fraudulent Transfers—All Defendants)

153.   Ultegra incorporates the preceding allegations as if fully set forth in this paragraph.

154.   Between mid December 2018 to mid January 2019, Defendants Northway and Mining Power were the owners of $600,000.00 and more in cash and various equipment and assets.

155.   Between January 20, 2019, and February 4, 2019, Maranda and Svorai transferred $600,000.00 from M&T to Federal Teachers to avoid repaying the Loan and the fees.

156.   Around that same time, as demonstrated on video recording, Defendants transferred various assets and properties from its facilities to the facilities of third parties, including Motorcycle Salvage, in and around upstate New York.

157.   Ultegra is informed and believes, that the transfers were made with an actual intent to hinder, delay, or defraud Ultegra in the collection of debts owed to it and damages it incurred.

158.   Further, Maranda and Svorai made the transfers with the intention to render them, Northway, and Mining Power "judgment-proof."

159.   Defendants, Maranda, Svorai, Northway, and Mining Power did not receive reasonably equivalent value for the transfers they made to third parties.

160.   The transfer of certain funds into various bit coin accounts with CoinBase, BitPay, and the other named Defendants were intended to make Northway and Mining Power's assets illiquid.

161.   Because of these fraudulent transfers, Ultegra has suffered damages in an amount

to be proven at trial.

Dated: February 10, 2019
Denver, Colorado

/s/ T. Edward Williams, Esq.
Peyrot & Associates, PC
62 William Street, 8th Floor
Tel: 646-650-2785
Fax:646-650-5109
Email: Edward.williams@peyrotlaw.com

## VERIFICATION

I, Muhammad Howard, declare as follows:

1.      I am an Officer of Ultegra Financial Partners and I am responsible for, among other things, making and originating loans on behalf of Ultegra.

2.      I have reviewed the Complaint.

3.      Regarding the allegations on which Ultegra has personal knowledge, the I know or believes them to be true.

4.      Regarding the allegations of which Ultegra does not have personal knowledge, I believe them to be true based on specified information, documents, or both.


Date: February 8, 2019.

Muhammad Howard